**Tim BURDINE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1085S397.

Supreme Court of Indiana.

Dec. 2, 1987.

Rehearing Denied Feb. 12, 1988.

Steven C. Litz, Nile Stanton & Associates, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Tim Burdine stood trial for the beating of 84–year–old Harold Allen in Allen's apartment near Lafayette. A jury found Burdine guilty of attempted murder, Ind.Code § 35–42–1–1, § 35–41–5–1 (Burns 1985 Repl.), a class A felony. The trial court sentenced him to fifty years imprisonment.

Burdine raises these issues on direct appeal:

1) Whether the proof of intent was sufficient, in light of the evidence showing Burdine was intoxicated at the time of the attack;

2) Whether Burdine was denied a fair trial because of prosecutorial misconduct;

3) Whether he is entitled to discharge because the State failed to prosecute him within one year;

4) Whether it is improper to question veniremen as part of a hearing on a motion for a change of venue;

5) Whether his statements to police were involuntary and inadmissible because he had been drinking;

6) Whether the trial court committed fundamental error by commenting on the accused's right not to testify;

7) Whether the trial court improperly restricted cross-examination by refusing to allow the defense to impeach the victim on a collateral matter, and

8) Whether the trial court's imposition of a fifty-year sentence was manifestly unreasonable.

### I. Sufficiency of the Evidence

■ Burdine claims the evidence was insufficient to support the jury's verdict. When reviewing such a claim, this Court will consider only the evidence most favorable to the verdict with all logical inferences drawn therefrom. Our task is not to reweigh the evidence or judge the credibility of witnesses. The verdict will not be disturbed when there is substantial probative evidence from which the trier of fact could reasonably infer guilt beyond a reasonable doubt. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence at trial showed that about 9:30 p.m. on July 20, 1983, Burdine knocked on the door of Anne Noonan's apartment at the Cambridge Estates complex in Lafayette. Burdine asked for "Alfred"; the victim's full name was "Aldred Harold Allen." Noonan, who smelled alcohol on Burdine's breath, said Alfred did not live there and shut the door.

Noonan heard a knock across the hall, peered through the peephole in her door, and saw Burdine standing in the door to the apartment of Aldred Harold Allen. Allen rose from his bed without his glasses or contact lenses and opened the door. Noonan saw Burdine push Allen and raise his hand to hit him. Allen retreated into his apartment, and Burdine followed, closing the door. Allen was severely beaten, although he was unsure of the nature of the instrument used or the identity of his assailant. At some point, the assailant stated, "You know I'm here to kill you."

A police officer working as a security guard at the complex arrived, talked to Noonan, and then knocked on Allen's door. There was no response, although the officer heard someone breathing from behind Allen's door. Two sheriff's deputies arrived, and one of the officers kicked in the door to Allen's apartment. Burdine, behind the door, was knocked against the wall. Allen was unconscious on the floor of the apartment hallway with a 12–inch socket wrench next to him.

At the officer's direction, Burdine stepped out of the apartment. Noonan, still peering through her peephole, recognized him as the man who had earlier confronted Allen. She had not seen anyone other than Burdine enter the apartment that evening before the officers arrived. Burdine's arms, legs and torso were cover-

ed with blood. Perspiring heavily and still smelling of alcohol, Burdine told police, "That old man in there fell." After being handcuffed, he attempted to flee but was soon apprehended.

Burdine later told police that he consumed six or seven mixed drinks and two placidyls, which are sedatives, before blacking out at 4 p.m. He said his next memory was of being restrained by police after his escape attempt. Burdine denied knowing Allen.

Burdine specifically alleges that the State failed to prove beyond a reasonable doubt that he knowingly and intentionally struck Allen with the intent to kill. Ind. Code § 35–41–5–1, § 35–42–1–1. He claims that he was so intoxicated that he was incapable of forming the requisite intent.

■ A defendant may present evidence that he was intoxicated to such a degree that he could not possess the design or guilty intent necessary to establish *mens rea*. It is the jury's duty to assess that evidence in light of the State's proof that the defendant possessed criminal intent. *Melendez v. State* (1987), Ind., 511 N.E.2d 454.

Burdine's fiancee and her friend testified that Burdine drank beer and a bottle of vodka on the morning of the crime and passed out before noon. The two women also indicated that Burdine had taken two placidyls. They testified that when they saw Burdine again at 8:30 p.m., he was drinking, staggering and speaking unintelligibly. The State's witnesses who saw Burdine that night testified that Burdine smelled of alcohol.

■ Allen's neighbor, however, testified that Burdine was not staggering. Several police officers testified that Burdine walked without difficulty, appeared to understand the events of the evening and responded accurately to police questions. Medical testimony showed that two placidyls would not have a substantial effect on the individual's mental state. Moreover, Burdine was adequately in control of his faculties to enable him to overcome the victim and strike him repeatedly with a heavy wrench and to attempt to escape from police. He had the mental capacity to give a clear statement to police. The jury's rejection of Burdine's intoxication defense was supported by the evidence.

## II. Prosecutorial Misconduct

■ Burdine claims that he was denied a fair trial because of various episodes of prosecutorial misconduct. In reviewing such a claim, this Court first must determine, with reference to case law and the disciplinary rules in effect at the time, whether the prosecutor's actions constituted misconduct. The next consideration is whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. First, Burdine claims that the prosecutor committed misconduct by dismissing the original charges and refiling identical charges the same day. Ind.Code § 35–34–1–13(a) provides:

> Upon motion of the prosecuting attorney, the court shall order the dismissal of the indictment or information. The motion may be made at any time before sentencing and may be made on the record or in writing. The motion shall state the reason for dismissal.

The prosecutor in Burdine's case explained the dismissal by saying it was "in the best interest of the State."

■ This section vests no discretion in the trial court. If the prosecutor moves for dismissal and states his reasons therefor, the trial court must grant the motion. *Swinehart v. State* (1978), 268 Ind. 460, 376 N.E.2d 486. The statute does not provide any standard or authority for assessing the validity of the State's reasons for dismissal. While the prosecutor's stated reason in this case is hardly detailed, it was sufficient to trigger operation of the statute and require the trial court to grant the motion to dismiss under Ind.Code § 35–34–1–13(a). Because the dismissal occurred prior to the attachment of jeopardy, the State was not barred from refiling an information charging the same offense in

identical terms. *See Hughes v. State* (1985), Ind.App., 473 N.E.2d 630.

■ Burdine alleges several other acts of prosecutorial misconduct, claiming that as a whole they placed him in grave peril. Even if an isolated instance of misconduct may not deprive a defendant of due process, repeated instances which reflect a deliberate attempt to prejudice him may do so. *Maldonado*, 355 N.E.2d at 848. Burdine claims the State failed to inform him that no discernible fingerprints were found at the scene of the crime; the State inadvertently included "a woman's red blouse" on the list of exhibits found in Allen's apartment, although the blouse was evidence in another case; and the prosecutor improperly impeached Burdine's girlfriend by questioning her about prior misdemeanor arrests not available as impeachment under *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.

■ Assuming, *arguendo*, that the three incidents amounted to prosecutorial misconduct, Burdine has failed to show that he was placed in grave peril from these actions. This determination rests on the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Maldonado*, 355 N.E.2d at 848. The defense learned before trial that fingerprints were indiscernible at the scene and was adequately prepared on that issue. Defense counsel arguably invited the error concerning the red blouse because the prosecutor informed her before trial that no red blouse had been found in this case, but she proceeded with questions about the blouse at trial anyway. That questioning was brief and did not prejudice the defendant. Finally, though the State concedes that the prosecutor's questions were improper, the trial court sustained defense objections to them and admonished the jury.

### III. Discharge

Burdine claims that the trial court improperly denied his motion for discharge under Criminal Rule 4(C) when the State failed to bring him to trial until twenty months after his arrest. The rule in effect at that time provided:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar.... Any defendant so held shall, on motion, be discharged.

Crim.Rule 4(C), Ind.Rules of Procedure

■ The information charging Burdine with attempted murder was filed July 26, 1983, and he was arrested and arraigned on July 29, 1983. Thus, the one-year period within which the State could prosecute Burdine under Criminal Rule 4(C) expired on July 29, 1984, assuming that he was not responsible for any delay. If a defendant seeks or acquiesces in any delay which results in a later trial date, the time limitations set by Criminal Rule 4 are extended by the length of such delays. *Webb v. State* (1983), Ind., 453 N.E.2d 180, *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767; *Lyons v. State* (1982), Ind., 431 N.E.2d 78.

■ Burdine sought several continuances after the charges were refiled on January 26, 1984. The court retained the March 19, 1984, trial date which had been scheduled before the dismissal. Burdine contends that delay caused by his continuances should be attributed to the State for purposes of the rule because the State's earlier dismissal created "inevitable delay" and required a defense need for "additional time with which to prepare." It is true that the dismissal and refiling of the same charge does not toll the one-year period within which a defendant must be brought to trial under Criminal Rule 4(C). *Hughes v. State* (1985), Ind.App., 473 N.E.2d 630. Thus, even after dismissal and refiling, the State had until July 29, 1984, to bring Burdine to trial, assuming no delay on his part.

The record shows that all of the delay after March 19, 1984, was attributable to Burdine for reasons unrelated to the State's dismissal and refiling. Burdine sought at least two continuances because he changed lawyers. These delays were chargeable to the defendant. *Andrews v. State* (1982), Ind., 441 N.E.2d 194. At one point, the trial date was vacated because Burdine pled guilty under an agreement with the State. He later withdrew that plea, causing the trial to be delayed until February 19, 1985. The delays resulting from Burdine's changes of pleas are also chargeable to him for purposes of the rule. *Vaughan v. State* (1984), Ind.App., 470 N.E.2d 374. Thus, Burdine was tried well within the prescribed time limits.

### IV. Use of a "Test Jury"

Soon after the first informations were filed, Burdine filed a motion for change of venue alleging prejudicial pre-trial publicity. Although most of the many news accounts which followed the beating merely recited the facts in the case, a few linked Burdine to a series of burglaries in the area.

The State filed a "Petition to Summon Random Members of the Current Jury Panel." The trial court, over the defendant's objection, granted the motion and ordered that six veniremen attend the hearing on the motion for change of venue.

During that hearing, the defense presented copies of numerous news stories about the beating which had been published or broadcast. The attorneys also conducted voir dire of six veniremen, posing questions about their knowledge of the case and ability to act as impartial jurors. Five of the six test jurors said they had heard news accounts of the beating, but their knowledge was limited to the basic facts of the case. None mentioned hearing that Burdine was a burglary suspect.

When the charges were dismissed and refiled, the parties stipulated that all evidence heard in the first cause would be admitted in the second cause. Burdine subsequently filed a second motion for change of venue. In denying that motion, the trial court thus had before it the evidence presented on the first motion.

Burdine claims that the trial court deprived him of a fair trial because it had no authority to summon a "test jury." A "test jury" is a novel concept. This Court encountered it for the first time in *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied*, — U.S. —, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), where we held that it was not error for a trial court to refuse to call a test jury sought by the defendant for purposes of a motion for change of venue. That ruling rested on our conclusion that "such a body is unknown to our legal process" and the trial court consequently had no obligation to allow it.

Of course, this case presents the opposite question, inasmuch as Burdine claims error from the *granting* of the request for the "test jury." The trial court has the discretion to guide the course of proceedings before it. *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. With regard to a hearing on a motion for change of venue based on pretrial publicity, the objective is to determine whether prejudicial publicity exists and, if so, the extent to which it has influenced prospective jurors. In effect, a defendant who tenders newspaper articles asks the trial court to consider the articles as evidence probative of the likelihood that an impartial jury can be seated. The testimony of persons drawn from the pool of potential jurors provides similar information to the court.

It is not uncommon for a defendant in a hearing on a motion for change of venue to present witnesses, often relatives or associates, who testify that they have been influenced by the publicity at issue or that they sense pervasive prejudice against the defendant. *See, e.g., Tabor v. State* (1984), Ind., 461 N.E.2d 118. In this case, the defense called the victim's co-worker to testify about the number of people who had indicated an awareness of the beating or expressed sympathy for the victim. Admitting such testimony is an extension of the rule that the defendant's motion for change of venue "should not be arbitrarily denied

without affording the defendant an opportunity to bolster the credibility of such with supporting testimony." *Brown v. State* (1969), 252 Ind. 161, 173, 247 N.E.2d 76, 83.

██ Having accepted testimony from witnesses associated with the parties as probative of the likelihood of a fair trial, it is only logical to allow trial courts, if they choose, to consider evidence from an objective group of community residents summoned to court as a "test jury." We conclude that while a trial court is not obligated to grant a request for a test jury, the court is not prohibited from granting it either. Such a request lies within the sound discretion of the trial court.

██ Burdine also claims that the trial court erred when it denied his motion for change of venue. To prevail on appeal from such a denial, the defense must show the existence of prejudicial publicity and that jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. *Timmons v. State* (1986), Ind., 500 N.E.2d 1212. Prejudicial pretrial publicity is that which contains inflammatory material which would not be admissible at the defendant's trial or contains misstatements or distortions of the evidence given at trial. *Kappos v. State* (1984), Ind., 465 N.E.2d 1092.

██ Although those articles referring to Burdine as a suspect in a series of burglaries were prejudicial, the record does not show that any of the jurors encountered those particular stories. While five of the six "test jurors" knew about the beating, a juror need not be ignorant of the facts in the case. *Bauer v. State* (1983), Ind., 456 N.E.2d 414. The jury which heard Burdine's case was not selected until months later. It seems even less likely that they would remember the publicity or be affected by it. The small section of the voir dire from trial which is part of the appellate record does not establish otherwise. We conclude the trial court did not abuse its discretion by denying the motion for change of venue.

## V. *Statements to Police*

Burdine claims that several of his statements to police were improperly admitted at trial after the court denied his motions to suppress. Burdine contends that his first statement, "That old man in there fell," was inadmissible, presumably under the Fourteenth Amendment, because he was too intoxicated to waive his *Miranda* rights voluntarily. Burdine makes the same contention with regard to his later written statement.

██ Burdine's first statement was unsolicited and occurred before Burdine was taken into custody. Its admission was proper. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

██ Burdine's written statement, on the other hand, did occur during a custodial interrogation. Its admission clearly would be governed by the requirements of due process. The State has the burden of proving the voluntariness of the defendant's confession. The fact that the defendant was intoxicated when he gave the statement does not render it inadmissible *per se;* rather, intoxication is one factor to be considered by the trial court in determining whether a statement was voluntary. When reviewing the trial court's ruling on the voluntariness of the defendant's statement, when the evidence is in conflict, we will consider only that evidence which supports the ruling and the unrefuted evidence in the defendant's favor. *Feller v. State* (1976), 264 Ind. 541, 348 N.E.2d 8.

██ The evidence submitted at the hearing on Burdine's motion to suppress, as well as that at trial, supports the trial court's admission of the statement. Burdine produced evidence showing that he took two placidyls, drank one-and-a-half bottles of vodka, blacked out at 4 p.m. and was drinking again at 8:30 p.m. The statement was taken more than six hours later. The officers who encountered Burdine that evening testified that he smelled of alcohol but that he walked without difficulty. They noted that Burdine gave his social security number and other information without hesitation and that he responded

promptly and accurately to the officers' directions. He told police that he was sleepy but did not indicate he was too intoxicated to proceed. This record adequately supports the trial court's determination that Burdine's written statement was voluntary.

Burdine also claims his written statement was inadmissible because it was the result of police interrogation immediately following his unfulfilled request for counsel. Immediately before Burdine gave the statement, he asked for an opportunity to call his parents. Burdine told police that the purpose of the call was to raise bail money as soon as possible. The officers told him that he could call after he concluded his statement.

■■■ Burdine now claims that he was invoking his right to counsel when he requested that phone call and police were barred from questioning him further until he had an opportunity to consult with an attorney. *See Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The evidence suggests only that he was seeking early release, not counsel. The police were not barred from taking the statement before he conferred with counsel.

## VI. Comment on Failure to Testify

Appellate counsel asserts as error the trial court's comments on the defendant's right not to testify and says in his brief that:

"the trial court not only commented on that right but specifically stated that 'a lot of us think that ... we would sure want to take the witness stand and tell our side of it'. To compound matters, when the juror said he still felt 'like [appellant] should take the witness stand', the court replied, 'Okay, fair enough.'" (citations omitted)

The record actually shows the following. During voir dire, defense counsel questioned one venireman at length about the defendant's right to refuse to testify. When the venireman continued to state that he would infer guilt from the defendant's silence, defense counsel invited the

court to question the potential juror further and challenged him for cause. The following colloquy occurred:

Court: [T]he law presumes people to be innocent. And the burden is on the State, then, to prove that they're guilty. And a defendant is entitled to rely on that, and say prove it. And he doesn't have to do anything. If he wants to—if he wants—if he chooses not to take the witness stand or testify or do anything, he doesn't have to. And the case, then, if he does not, the case is decided on all the other evidence whether he's proven guilty or not. And it's because of the presumption of innocence that a person is not required to take the witness stand. *Now a lot of us think that, you know, if we were in that kind of situation that we would sure want to take the witness stand and tell our side of it.* But he doesn't have to, and the fact that he does not cannot be held against him in your—in your evaluation of the evidence that's presented. Given that explanation, do you think that you can apply those principles or do you think that, you know, regardless of—of what the situation is he ought to take the witness stand anyway?

Venireman: I feel he should take the witness stand.

Court: Okay, fair enough. I think we ought to excuse you. It's okay. That's all right.

Defense counsel approached the bench and stated that she was "concerned" that the jury might misinterpret the court's comments. Defense counsel appeared to agree that a preliminary instruction regarding the defendant's right to refuse to testify would be an appropriate curative measure.

The trial court gave the following final instruction:

The fact that the defendant does not testify raises no presumption of any kind against him. The defendant's failure to testify shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocence of the defendant.

 Burdine now claims that the judge's comments concerning his right not to testify was reversible error. It is true that the court and the prosecutor are prohibited under the Fifth Amendment and the Indiana Constitution from commenting at trial on the defendant's courtroom silence. *Lucas v. State* (1986), Ind., 499 N.E.2d 1090; *Williams v. State* (1981), Ind., 426 N.E.2d 662. Defense counsel opened the subject with extensive questioning and asked the trial judge to continue it. Furthermore, Judge Milligan clearly indicated in his interrogation of the juror and subsequently in his instructions that the jury should not infer guilt from the defendant's failure to testify. This is the stuff of proper voir dire. It is not error.

## VII. Impeachment

The defense sought to prove that one Janie Fields and others had provided sex to Allen for money. According to the defense, this evidence was important in establishing that other people had access to Allen's apartment and could have committed the crime charged. Allen denied on cross-examination that he knew Fields. The defense sought to call Fields as a witness to prove otherwise, but the trial court sustained the prosecutor's objection that the evidence was irrelevant and improper impeachment. Though Fields had not responded to a subpoena, counsel for Burdine made an offer of proof. Burdine now claims the ruling constituted a deprivation of his Sixth Amendment right to confront and cross-examine the witnesses.

 The connection between the evidence concerning the prostitutes and the crime at hand was tenuous. It certainly did not meet the standard for introducing evidence showing a third party committed the charged crime. To be admissible, such evidence must do more than cast suspicion or raise a conjectural inference that a third party committed the crime; it must directly connect the third party to the crime charged. *Brown v. State* (1981), 275 Ind. 227, 416 N.E.2d 828.

 Burdine claims the evidence concerning the prostitution was admissible as impeachment. Evidence of specific acts of misconduct not reduced to a conviction, however, is not admissible for general impeachment purposes. *Turpin v. State* (1982), Ind., 435 N.E.2d 1. Moreover, Allen's denial on cross-examination would have precluded impeachment on a collateral issue.

## VIII. Sentencing

Burdine alleges his 50–year sentence was manifestly unreasonable. Rule 2, Ind. Rules for the Appellate Review of Sentences.

Imposing the maximum sentence, the trial court cited as aggravating circumstances the advanced age of the victim and the seriousness of the offense. The court found as mitigating factors that the crime was the result of circumstances unlikely to recur and that Burdine had no prior felony convictions. The court then determined that the aggravating circumstances outweighed the mitigating circumstances.

 Burdine claims that his intoxication should have been considered a mitigating circumstance. The trial court is not obligated to view voluntary intoxication as a mitigating factor. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

 A 50–year sentence was appropriate for the seemingly unprovoked beating of an elderly man in his own apartment—a beating which left the victim with permanent physical injuries. We find no error.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.