**James WILDER, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 71S00–9805–CR–268.

Supreme Court of Indiana.

Sept. 22, 1999.

Mark S. Lenyo, South Bend, IN, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SELBY, J.

James Wilder was convicted of robbery and felony murder for his involvement in a December 1996 robbery and for the death of Annie Fulford. The trial judge merged the two counts and sentenced Defendant to fifty-five years. On appeal, Defendant argues that the evidence was insufficient to convict him of these crimes and that his federal and state constitutional right to confront witnesses against him was violated.

We have exclusive appellate jurisdiction over this direct appeal because Defendant's sentence exceeds fifty years. *See* Ind. R.App. P. 4(A)7. We affirm the trial court.

## FACTS

The facts, viewed in the light most favorable to the State, are as follows. On December 27, 1996, Michael Fulford, the victim's brother, was "partying" with several of his friends at his trailer. Defendant, Jimmy Bailey, Taurus Foster, and Curtis Medina drove to Fulford's trailer in order to obtain marijuana. According to the trial testimony of Medina, Defendant, Bailey, and Foster intended to rob Fulford of his marijuana.

Medina also stated that, upon arrival, Defendant and Foster decided to "up the straps," i.e., display their guns during the robbery. (R. at 628.) After the perpetrators entered the trailer, Bailey followed Fulford to the back bedroom to get the marijuana. There, Bailey pulled out his gun and commanded Fulford to give him "the shit." (R. at 37–38.) Defendant and Foster remained in the front room. One of them displayed a gun, announced the robbery (told the occupants to "break themselves"), and ordered the occupants of the front room to get on their knees. (R. at 549.) They did so, and began throwing out their valuables. Defendant cocked his gun and Defendant and Foster rifled through the occupants' pockets.

Shortly thereafter, Lief O'Connell and Annie Fulford arrived at the trailer. Foster grabbed O'Connell by the shoulder, who sprayed mace in Foster's face. O'Connell struggled with Foster. Defendant pointed his gun in the direction of O'Connell and Annie Fulford. The occupants in the living room testified they heard two shots. After the occupants fled, Fulford discovered that Annie Fulford had been shot. O'Connell unsuccessfully attempted to resuscitate her while Fulford called 911.

The perpetrators fled the scene of the crime. According to Medina, Foster complained of the discomfort from the mace, and Defendant stated that "he thought he had popped someone." (R. at 615–16.) On January 17, 1997, Lila Savage and Michael Fulford identified Foster in a police line-up. Foster then identified Defendant, Bailey, and Medina as the other perpetrators.

## DISCUSSION

### Insufficiency of the Evidence

▇▇▇ Defendant argues that the evidence presented at trial was insufficient to convict him of robbery and felony murder. When this Court reviews a conviction for the sufficiency of the evidence, we look to the evidence most favorable to the verdict and draw all reasonable inferences from that evidence. *See Blanche v. State*, 690 N.E.2d 709, 712 (Ind.1998) (citing *Deckard v. State*, 670 N.E.2d 1, 3 (Ind.1996)). We neither reweigh the evidence nor assess issues of credibility. *See id.* Rather, if there is "substantial evidence of probative value to support the judgment," we will affirm. *Id.* (citing *Minter v. State*, 653 N.E.2d 1382, 1383 (Ind.1995)). If a reasonable trier of fact could have found the defendant guilty, we will affirm the jury's verdict. *See Bartlett v. State*, 711 N.E.2d 497, 499 (Ind.1999).

▇▇▇ Defendant challenges his convictions based on the sufficiency of the evidence, arguing that the in-court identifications of him by Sharra Ellsworth, Shannon Mars, Jason Presnell, and Lila Savage were unreliable. In support of this argument, Defendant points out that none of the in-court witnesses had been able to identify Defendant upon being shown photographs by the police, and that several witnesses had actually picked out other suspects from these photographs. In further support of his unreliability hypothesis, Defendant proposes that repetitive news accounts reinforced the witnesses' belief that Defendant had actually participated in the crime. Presumably, thus, Defendant is arguing that without reliable in-court identifications, there is insufficient evidence upon which to convict.

It is the duty of the fact-finder to assess the credibility of the witnesses' testimony. Likewise, assessing the reliability of witnesses' in-court identifications is a task that lies within the province of the jury. All of the witnesses who identified Defendant were present at the robbery and had ample opportunity to view Defendant throughout the time he and his accomplices were in the trailer. Defense counsel thoroughly cross-examined the witnesses regarding their inability prior to trial to identify Defendant. Several of the witnesses averred that Defendant's face was one they would never forget. Moreover, there was other evidence the jurors could have considered important in reaching the conclusion that Defendant was guilty beyond a reasonable doubt. An accomplice to the crime, Curtis Medina, attested to Defendant's involvement in the robbery. Medina testified that when they arrived at Fulford's, Defendant and Foster discussed robbing Fulford of his marijuana. Medina also stated that Defendant told him "he thought he had popped someone." (R. at 615–16.) The state submitted sufficient evidence from which the jury could have concluded that Defendant was guilty of robbery and felony murder.

### The Right of Confrontation

Defendant argues that his right of confrontation, grounded in both the federal and state constitutions, was violated when Medina, a witness for the state, spoke too softly and when the prosecuting attorney intentionally blocked Defendant and defense counsel's view of the witness. In support of his right of confrontation argument, Defendant relies on *Casada v. State*, 544 N.E.2d 189, 194 (Ind.Ct.App.1989), a case in which the Court of Appeals found that the placement by the trial judge of a chalkboard between a child victim and her accused molester during direct examination, completely obstructing the view, violated the defendant's state constitutional right of confrontation.

▇▇▇ The right of confrontation is a fundamental right guaranteed by the Sixth Amendment, made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Likewise, Article I, Section 13 of our state constitution provides defendants in criminal prosecutions the right "to meet the witnesses

face to face." Ind. Const. art. I, § 13. At the core of the right of confrontation under the Sixth Amendment lies the defendant's opportunity to cross-examine the witness. *See Brady v. State,* 575 N.E.2d 981, 985 (Ind.1991). In *Brady,* this Court recognized that our constitution contains both the right to cross-examine as well as the literal right to "meet the witness face to face." *Id.* at 988.

 Defendant's counsel objected on four separate occasions during the State's examination of the witness either because defense counsel was unable to hear the witness or because the prosecuting attorney was blocking his view of Defendant or of the State's exhibits. In view of these objections, the trial judge asked the witness to repeat his testimony on several occasions and to speak more loudly. The trial judge also admonished the prosecuting attorney to "step back" and informed defense counsel that he was free to "move about," presumably so that he could see and hear the witness better. (R. at 604–05.)

It appears from the record that defense counsel objected at every instance in which he could not see or hear the witness and that at each juncture his objections were adequately, if not perfectly, addressed. We therefore conclude that Defendant's right of confrontation was not violated by the prosecuting attorney's intermittent obstruction of his view or by the witness's failure to speak loudly. While the prosecuting attorney admitted in his closing statement that he had intentionally attempted to block his witness's view of Defendant, blameworthy conduct, it does not appear that the obstruction was a problem for a significant portion of the direct examination. In addition, there is no evidence in the record that the defense was, in the end, unable to effectively cross-examine the witness or comprehend the witness's testimony. In short, the interference with Defendant's right of confrontation here does not rise to the level of that in *Casada,*

544 N.E.2d at 189, upon which Defendant relies.

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.