Carolyn HAMPTON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9612–CR–789.

Supreme Court of Indiana.

Oct. 7, 1999.

M.E. Tuke, Indianapolis, IN, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, Christopher LaFuse, Deputy At-torney General, Indianapolis, IN, Attorneys for Appellee.

SELBY, J.

Carolyn Hampton was convicted for the murder and robbery of Joseph Randle, and sentenced to consecutive terms of sixty years for murder and forty-five years for robbery, a Class A felony. In this direct appeal, she challenges the sufficiency of the evidence sustaining her verdicts and argues that her sentence is manifestly un-reasonable. She further argues that her convictions for robbery as a Class A felony and murder violate the prohibition against double jeopardy. We find that the Double Jeopardy Clause of the Indiana Constitu-tion was violated by her convictions of robbery resulting in serious bodily injury and murder, and reduce her robbery con-viction to a Class C felony. We remand to the trial court for re-sentencing on the Class C felony conviction.

### Factual and Procedural Background

At approximately 7:30 in the morning of February 5, 1995, Joseph Randle was found dead in his apartment by Julie Herrick, his home health care provider. Randle was an elderly man who needed continuous health care for severe insulin-dependent diabetes. He had lost both of his legs and his sight as a result of the diabetes. Randle was found lying on the floor of his living room in front of the hallway door surrounded by puddles of blood and carefully wrapped in blankets. A later autopsy revealed that Randle had sustained numerous blunt force wounds to the head, and was stabbed twenty times, primarily in the chest region. Blood was splattered on the wall, a bloody palmprint was found on the wall above the body and later identified as Carolyn Hampton's, bloody footprints were found on the kitch-en floor, bloody medical cards were found in the living room, and a condom wrapper with blood on it was found outside the apartment.

The main bedroom was ransacked and in complete disarray. All of the drawers

were pulled out, including the drawers to a file cabinet in which Randle often kept a tin full of money. One home health care provider testified that Randle kept the key to this file cabinet in his money pouch, and would give it to the provider whenever he made a request for some money from this cabinet. This key was found on the floor of the living room the day Randle's body was discovered. There was a glass of water in the bedroom on which the fingerprints of Carolyn Hampton were later discovered. There were several cigarette butts extinguished on a coaster in the living room. Carolyn Hampton's fingerprints were also discovered on a health care card found in the living room among several other cards, cards which were usually kept in Randle's money pouch. Conspicuously absent were a VCR, a boombox, and money, the usual presence of which was established by numerous witnesses familiar with Randle's apartment and its contents.

Two neighbors had noticed unusual activity on the night of the murder in or around Randle's apartment. Randle's next door neighbor, who shared a living room wall with Randle, heard several thuds in Randle's apartment around 10:30 p.m. Jodi Beeler, a neighbor directly across from Randle, arrived home around 10:30 p.m. and noticed a light-skinned black man leaving from the vicinity of Randle's patio with what looked like two VCRs.

Carolyn Hampton was first questioned in relation to this crime several days after it had occurred, then again a week later. Sergeant Gibbs, the investigator, believed that the perpetrator was someone familiar with Randle's house and habits, and interviewed Randle's former home health care providers, including Carolyn Hampton. Carolyn Hampton had worked as a home health care provider for Randle for three weeks in October 1994, at which point she was terminated.

In two interviews with Gibbs, Hampton stated that she had been at the scene of the crime around 10:30 p.m. on February 5, 1995, the night before the body was discovered, for the purpose of engaging in consensual sexual activity. She stated that she found Randle dead, became very upset, had a glass of water, smoked several cigarettes, then left. She stated that she didn't call the police because of previous bad experiences with the police. When Hampton failed to return for further questions, Sergeant Gibbs discovered that Hampton had provided a false address.

Several months later, Hampton approached a Philadelphia policeman, told him she had information about a murder in Indiana, and implicated her live-in boyfriend, Anthony Ratcliff. She was returned to Indiana and charged and convicted on three counts: murder, felony murder, and robbery. The felony murder charge was merged with the murder charge, and Hampton was sentenced for murder and robbery.

## DISCUSSION

In this direct appeal, Hampton makes several claims. She contends that: 1) the convictions were not supported by sufficient evidence; 2) the sentence was manifestly unreasonable; and 3) that she cannot be convicted of both murder and robbery as a Class A felony when both convictions are predicated on the same act of stabbing. We reject the first two arguments. With respect to the third argument, we reduce Defendant's conviction of robbery to a Class C felony under the standard enunciated in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999).

### Sufficiency of the Evidence

■ Hampton first claims that the evidence was insufficient to convict her of both murder and robbery. When this Court reviews a conviction for sufficiency of the evidence, we look to the evidence most favorable to the State and all of the reasonable inferences to be drawn from such evidence. *See Blanche v. State*, 690 N.E.2d 709, 712 (Ind.1998) (citing *Deckard*

*v. State,* 670 N.E.2d 1, 3 (Ind.1996)). We do not reweigh the evidence or assess the credibility of witnesses, but merely look to the evidence and determine whether there was substantive probative evidence to support the judgment. *See id.* at 712.

■ Hampton claims that the evidence was insufficient to support her convictions because there is no evidence she committed either crime. She argues that the evidence establishes only her presence at the crime scene, and mere presence is insufficient to sustain a conviction.

■ Hampton's characterization of the evidence is incomplete, however. While the murder of Joseph Randle was proved in part by the use of circumstantial evidence, a verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *See Taylor v. State,* 676 N.E.2d 1044, 1047 (Ind.1997) (citing *Green v. State,* 587 N.E.2d 1314, 1315 (Ind.1992)). Presence at the crime scene alone cannot sustain a conviction, but presence when combined with other facts and circumstances, such as companionship with the one engaged in the crime, and the course of conduct of the defendant before, during, and after the offense, may raise a reasonable inference of guilt. *See Wright v. State,* 690 N.E.2d 1098, 1106 (Ind.1997).

■ Furthermore, this conviction could also be sustained on the theory of accessory liability. Under this theory, one who aids, abets, or assists in a crime is equally as culpable as the one who commits the actual crime. *See Johnson v. State,* 687 N.E.2d 345, 349 (Ind.1997). The State argued accessory liability and the jury was instructed as to accessory liability. Hampton argues that she cannot be convicted on a theory of accomplice liability because she was not charged as an accomplice. However, the Indiana statute governing accomplice liability does not establish it as a separate crime, but merely as a separate basis of liability for the crime charged. *See* Ind.Code § 35–41–2–4

(1998); *Voss v. State,* 469 N.E.2d 788 (Ind. Ct.App.1984) (citing *Hoskins v. State,* 441 N.E.2d 419, 425 (Ind.1982)). Where the facts in the case raise a reasonable inference that the crime was carried out with an accomplice, it is appropriate for the judge to give such an instruction. *See Wright,* 690 N.E.2d at 1104.

■ The facts in this case support a reasonable inference that Carolyn Hampton either murdered and robbed Randle or aided her boyfriend Ratcliff in robbing and murdering Randle. Hampton's bloody palmprint was found on the wall above Randle's body. Her fingerprints were found on several items in the house, including a drinking glass in the bedroom, and a health care card usually kept in Randle's missing money pouch. Further, Hampton herself admitted to being at the crime scene at the time one neighbor heard loud noises from Randle's house, and another neighbor saw someone leave the house carrying items which looked like the items stolen from Randle's house. Further, the jury heard testimony that Hampton, like other home health care providers, would be familiar with the habits of Randle, including where he kept his money. This information included the fact that Randle kept money in a file cabinet, and the location of the key to the file cabinet. This key was later found on the living room floor. The jury also heard testimony that only those areas in which Randle regularly kept money were ransacked. Finally, the jury heard testimony that it would have been impossible to wrap blankets around Randle in the manner in which he was found without the help of at least one other person. Based on this information, the jury could have reasonably believed that the crime was committed by someone familiar with Randle's habits and that this person was Hampton.

### *Propriety of the Sentence*

■ Hampton argues that the sentence imposed was improper. She was sentenced to sixty years for the murder charge and forty-five years for the robbery

charge, to run consecutively. Hampton believes that the trial court abused its discretion by sentencing her without considering several mitigating factors, and by imposing consecutive sentences. Because sentencing decisions rest with the sound discretion of the trial court, they are given great deference, and are only reversed upon a finding of abuse of discretion. *See Blanche,* 690 N.E.2d at 714 (citing *Morgan v. State,* 675 N.E.2d 1067, 1072 (Ind.1996)). This Court is authorized to alter sentences pursuant to Indiana Appellate Rule 17(b) only where the sentence is "manifestly unreasonable in light of the nature of the offense and character of the offender."

The trial court is directed by Indiana Code § 35–38–1–7.1 (1998) to weigh aggravating and mitigating circumstances when arriving at a sentence. The trial court in this case properly weighed the aggravating and mitigating circumstances. The court found as aggravating factors the victim's age and the fact that Hampton violated a position of trust, and found as a mitigating factor Hampton's lack of criminal history. These are appropriate factors to consider in sentencing according to Indiana Code § 35–38–1–7.1. While Hampton argues that the judge should have found her rehabilitative efforts in prison and her history of abuse to be mitigating factors, a trial judge is not required to accept as true all of the mitigating factors presented by the defendant. *See Blanche,* 690 N.E.2d at 715. Where the mitigating factors urged by the defendant are not clearly set forth in the record, the trial court is not required to give weight to these factors. *See id.* In this case, no evidence was presented at trial regarding these mitigating factors. The only time the rehabilitative efforts of Hampton in prison and Hampton's history of abuse were mentioned was during closing argument, presented through her attorney. The trial court is not required to consider mitigating factors unsupported by sworn testimony or evidence.

Further, the trial court did not abuse its discretion by sentencing defendant to consecutive sentences. The aggravating and mitigating circumstances considered in determining a sentence are also utilized by the judge in determining whether consecutive or concurrent sentences should be imposed. *See* Ind.Code § 35–50–1–2 (1998). To impose consecutive sentences, the trial court must find at least one aggravator. *See Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1996) (citations omitted). We agree with Hampton that the trial court improperly considered the seriousness and heinousness of the crime as an aggravating factor. While the seriousness of the crime is listed as an aggravating factor under Indiana Code § 35–38–1–7.1, the trial court may consider it as such only when it is considering imposing a sentence that is less than the presumptive sentence. *See Mitchem v. State,* 685 N.E.2d 671, 679 (Ind.1997) (quoting *Jones v. State,* 675 N.E.2d 1084, 1088 (Ind.1996)). The trial court may not consider the seriousness of the crime in order to impose a greater sentence or a consecutive rather than concurrent sentence. *See id.* The use of this aggravating circumstance to impose consecutive sentences is not fatal to the sentence, however, if the sentencing decision is also justified by other valid aggravating circumstances. *See Isaacs v. State,* 673 N.E.2d 757, 765 (Ind.1996); *Widener v. State,* 659 N.E.2d 529, 533 (Ind.1995). The judge in this case appropriately found that the age of the victim and the violation of the position of trust occupied by Hampton in relation to the victim justified the imposition of consecutive sentences.

### Double Jeopardy

Hampton argues that she cannot be convicted of both murder and robbery as a Class A felony, because both the murder conviction and the enhanced robbery conviction are based on the same bodily injury to the victim, and to convict a defendant twice for the same act violates the double jeopardy clause of both the Indiana and federal constitutions. We analyze this claim applying the standard recently set forth in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999).

In *Richardson,* we developed what is essentially a two-part test for determining whether two convictions are permissible. A double jeopardy violation occurs when "the State ... proceed[s] against a person twice for the same criminal transgression." *Id.* at 49. Under *Richardson,* "two or more offenses are the 'same offense' ... if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (emphasis in original).

When we look to the actual evidence presented at trial, we will reverse one of the convictions if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the elements of one offense may also have been used to establish the elements of a second challenged offense." *Id.* at 53. Here, this reasonable possibility is present. The same evidence that supported the murder conviction, the act of stabbing, may have also been used to convict Defendant of robbery as a Class A felony. We therefore reduce Defendant's robbery conviction to a Class C felony.[1]

### Conclusion

We reduce Defendant's conviction for robbery from a Class A felony to a Class C felony, and remand to the trial court for re-sentencing on the robbery conviction. We affirm the Defendant's murder conviction.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.

---

1. Robbery as a Class C felony was charged in the State's Information and is a lesser included offense for which Defendant can be convicted. Robbery as a Class B felony, which was not charged by the State, is not necessarily a lesser included offense of robbery as a Class A felony. *See Kingery v. State,* 659 N.E.2d 490, 495 (Ind.1995). Thus, it is proper to reduce Defendant's conviction for robbery to a Class C felony rather than to a Class B felony.