Jimmy BAILEY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–9809–CR–486.

Supreme Court of Indiana.

Sept. 22, 1999.

Edward C. Hilgendorf, South Bend, Indiana, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SELBY, J.

Jimmy Bailey ("Defendant") was convicted of conspiracy to commit robbery, a class B felony,[1] robbery resulting in serious bodily injury, a class A felony,[2] and felony murder[3] for his role in the December 27, 1996 killing of Annie Fulford and the robbery of Michael Fulford's house trailer. The trial judge entered a judgment notwithstanding the verdict (j.n.o.v.) with regard to the robbery conviction, concluding that the double jeopardy clause of the federal and Indiana constitutions prohibited entry of a verdict on both the robbery and felony murder charges. The trial court further ordered Defendant to pay one year's restitution as a condition of probation. Defendant was sentenced to twenty years for conspiracy to commit robbery, with ten years suspended, and fifty-five years for felony murder, to run consecutively to Defendant's sentence for conspiracy.

We have exclusive jurisdiction over this direct appeal because Defendant's sentence exceeds fifty years. *See* Ind. R.App. P. 4(A)7.

On direct appeal, Defendant challenges the sufficiency of the evidence to convict him of conspiracy and felony murder. Defendant also argues that the order of restitution should be vacated because the trial court failed to set the amount of the restitution and the manner of performance. We affirm the conviction on the conspiracy and felony murder charges and remand to the trial court to fix the amount and manner of performance of restitution.

## FACTS

The facts, viewed in the light most favorable to the State, are as follows. On December 27, 1996, Michael Fulford, the victim's brother, was "partying" with several of his friends at his trailer. Defendant, Taurus Foster, Curtis Medina, and James Wilder drove to Fulford's trailer in order to obtain some marijuana. Medina testified that Foster and Wilder discussed robbing Fulford while still inside the vehicle. Medina stayed outside while the other three entered Fulford's trailer.

Once inside the trailer, Defendant followed Fulford to the back bedroom where Fulford kept a tool box that contained marijuana. Defendant then drew his gun, demanded marijuana, and told Fulford to empty his pockets. Fulford called to a friend of his, Anthony Davis, who had the key to the tool box. Fulford testified that Davis gave Defendant a half pound of marijuana and an electronic scale, and that he gave Defendant a ring and about $100. Concurrently, Foster and Wilder were robbing the occupants in the front room of the trailer. Annie Fulford arrived with her boyfriend Lief O'Connell during this robbery. O'Connell sprayed Foster in the face with mace, and Wilder fired a shot. Subsequently, a struggle ensued between Defendant and O'Connell in the hallway, and Defendant's gun discharged.

The perpetrators fled, and Fulford discovered that Annie Fulford had been shot. O'Connell administered CPR while Fulford called 911. Annie Fulford died from a bullet that passed through her left arm and shoulder and then into the back of her head. On January 17, 1997, Lila Savage, a guest of Fulford on December 27, 1996, and Fulford picked out Foster from a police line-up. Foster then identified Defendant, Medina, and Wilder as the other perpetrators.

---

1. *See* Ind.Code Ann. §§ 35–42–5–1; 35–41–5–2 (1998).

2. *See* § 35–42–5–1 (1998).

3. *See* § 35–42–1–1 (West Supp.1999).

At trial, Defendant testified that Michael Fulford often bought cocaine from him, that he went to the trailer with his friends to deliver cocaine to Fulford, and that he had no knowledge of any plans to rob Fulford. Defendant maintained he was unable to hear any discussions between Foster and Wilder because loud music was playing in the car, although he acknowledged seeing their "mouth[s] moving." (R. at 679.) He also maintained he was not carrying a gun. On appeal, Defendant appears to concede he committed an armed robbery in the back bedroom of Fulford's trailer. Defendant now contends, however, that there was insufficient evidence that he had knowledge of Foster and Wilder's robbery, and that the robbery in the front of Fulford's trailer and the murder of Annie Fulford were a separate transaction.

## DISCUSSION

### Insufficiency of the Evidence

Defendant argues that the evidence presented by the State was insufficient to convict him of both conspiracy and felony murder. When this Court examines the sufficiency of the evidence on appeal, we do not reweigh the evidence or resolve credibility issues. *See Blanche v. State,* 690 N.E.2d 709, 712 (Ind.1998) (citing *Deckard v. State,* 670 N.E.2d 1, 3 (Ind. 1996)). Instead, this Court considers "the evidence most favorable to the judgment" and draws all reasonable inferences from that evidence. *Id.* We will affirm the trial court, if, based on the evidence, there is "substantial evidence of probative value to support the judgment." *Id.* (citing *Minter v. State,* 653 N.E.2d 1382, 1383 (Ind.1995)).

Conspiracy to commit a felony consists of three elements: 1) the intent to commit a felony; 2) the agreement with another to commit a felony; and 3) an overt act, performed by either the defendant or the person with whom the defendant has entered into the agreement. Ind.Code Ann. § 35–41–5–2 (1998). Defendant challenges his conspiracy conviction on the basis of the second element, arguing there was no evidence whatsoever that he entered into an agreement with Foster and Wilder to rob Michael Fulford's trailer.

Even setting aside for the moment the reasonable inference that Defendant's robbery of Fulford in the back bedroom by itself establishes that Defendant agreed with Foster and Wilder to commit robbery, there is sufficient evidence from which a jury could reasonably conclude that Defendant agreed to rob Fulford's trailer. To prove the agreement element of conspiracy, the state need not "prove the existence of an express formal agreement." *Vance v. State,* 640 N.E.2d 51, 57 (Ind.1994) (citing *Abner v. State,* 479 N.E.2d 1254, 1258 (Ind.1985)). Further, the conspiracy may be proved solely on the basis of circumstantial evidence. *See id.* at 58 (citing *Abner,* 479 N.E.2d at 1258).

Defendant correctly cites *Sutton v. State* in support of the proposition that "mere association" with others who engage in a criminal act does not, in and of itself, suffice to uphold a conviction of conspiracy to commit a felony. 495 N.E.2d 253, 257 (Ind.Ct.App.1986). The jury, however, was free to disbelieve Defendant's testimony that the extent of his involvement was limited to mere association with Foster and Wilder. At trial, the prosecuting attorney pointed out to the jury several inconsistencies in Defendant's testimony.[4] The jury may have chosen to discredit Defendant's testimony in general. The jury could have believed, drawing on the testimony of Medina and Fulford instead,

---

4. Defendant testified, for example, that O'Connell was carrying the gun that discharged in the hallway. A lieutenant of the St. Joseph County Police Department testified, however, that powder burns on O'Connell's arms could not have come from the person who was holding the gun. Defendant also testified that he had been at Fulford's trailer numerous times to sell cocaine to Fulford, but was unable to explain why he and the other perpetrators got lost on their way to Fulford's trailer on the night of the robbery.

that Defendant had heard Foster and Wilder discuss the robbery of Fulford's trailer and the methods they would employ, and that, because all of the perpetrators acted as if carrying out a prearranged plan, Defendant had adopted the plan to rob Fulford as his own.

Defendant was present in the car when Foster and Wilder discussed robbing Fulford's trailer, he entered the trailer with Foster and Wilder, and he proceeded to rob Fulford in the back bedroom while Foster and Wilder carried out a robbery in the front room. Thus, there was sufficient evidence from which the jury could have reasonably inferred that Defendant agreed with Foster and Wilder to commit a felony.

■ With regard to the felony murder conviction, Defendant acknowledges he committed a robbery in the trailer, but argues his robbery was "a separate and independent robbery in a different room in the trailer." (Def. Br. at 19.) We agree with the State that this argument is "spectacularly unpersuasive." (Pl. Br. at 6.) Not only does this argument run contrary to Defendant's testimony at trial, but we also find it highly improbable that two robberies committed simultaneously in a dwelling normally derive from independent sources. There was sufficient evidence from which a reasonable jury could have concluded that Defendant's robbery derived from a single transaction, and, thus, that Defendant should be convicted for the felony murder of Annie Fulford.

### Restitution as a Condition of Probation

■ Restitution may be ordered by a trial court as part of a defendant's sentence, see Ind.Code Ann. § 35–50–5–3(a) (West Supp.1999), or as a condition of probation, see Ind.Code Ann. § 35–38–2–2.3(a)(5) (1998). When a court orders restitution as a condition of probation, it must also fix the amount of restitution, which may not exceed what a person will be able to pay, and the manner of performance. See id.

The trial court ordered restitution to the victim's mother, Carol Fulford, for her daughter's medical and funeral costs and for the counseling she underwent after her daughter's murder. At the sentencing hearing, the trial judge requested that the prosecuting attorney submit a memo regarding Carol Fulford's expenses and informed defense counsel that Defendant would then have the opportunity to respond. The sentencing order provided for the terms of restitution to be determined at the commencement of Defendant's probation.

■ Defendant argues that the failure to set the terms of restitution as statutorily set forth requires us to vacate the trial judge's restitution order. As we have long recognized, however, a trial judge enjoys wide latitude in fashioning the terms of a defendant's probation. See State ex rel. Abel v. Vigo Cir. Ct., 462 N.E.2d 61, 63 (Ind.1984). We will not set aside the terms of a probation order unless the trial court has abused its discretion. See id.

■ Defendant argues that, because the sentencing order provides for the terms of restitution to be set at his probation, the trial judge is in fact requiring the probation department to set the terms of restitution, in contravention of the statute, § 35–8–2–2.3(a)(5), and precedent, see McGuire v. State, 625 N.E.2d 1281, 1282 (Ind.Ct.App.1993) (finding error where trial court ordered the probation department to fix the terms of defendant's restitution payments). The sentencing order does not specify, however, that the probation department is to set the terms of Defendant's restitution, and therefore does not violate the statute. Nevertheless, because the trial judge has requested a memo from the State and a response from defense counsel on this issue, we think it proper for the judge to inquire into Defendant's ability to pay restitution, and to set the amount and manner of performance once he has received these documents from the parties.

## CONCLUSION

We remand to the trial court to fix the manner of performance and the amount of the restitution, and affirm the trial court in all other respects.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.