**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**LORINDA MEIER YOUNGCOURT**
**DANIEL DIXON**
Lawrence County Public Defender Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRUCE E. PHILLIPS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 47A01-1304-CR-148 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable Andrea K. McCord, Judge
Cause No. 47C01-1201-FA-60

**April 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Bruce E. Phillips ("Phillips") appeals his convictions and sentence for Conspiracy to commit Dealing in Methamphetamine, as a Class B felony,[1] and Possession of Chemical Reagents or Precursors with Intent to Manufacture Controlled Substances, as a Class D felony.[2] We affirm.

**Issues**

Phillips presents two issues for review:

I.      Whether his convictions are supported by sufficient evidence; and

II.     Whether his sentence is inappropriate.

**Facts and Procedural History**

On January 19, 2012, Phillips and his nephew, Eric Phillips ("Eric"), went into a Walgreens store in Bedford, Indiana. At the section where cards to request purchase of cold remedies containing pseudoephedrine were displayed, Eric took a card and handed it to Phillips.[3] Phillips proceeded to the pharmacy with the card, and purchased a 96-count package of a store brand decongestant containing pseudoephedrine. Eric approached the display of lithium batteries and looked at them, but did not purchase any of them.

These activities were brought to the attention of three Indiana State Police officers who were conducting surveillance of pseudoephedrine purchases in the area. Troopers

---

[1] Ind. Code §§ 35-48-4-1.1(a)(1), 35-41-5-2.

[2] I.C. § 35-48-4-14.5(e).

[3] Eric had, nine days earlier, reached his maximum legal allowance for the purchase of over-the-counter items containing pseudoephedrine.

Joshua Allen, Jon Patrick, and Kent Rohlfing decided to follow Phillips and his nephew after they left Walgreens. The troopers followed the pair to a gas station, to a WalMart (where purchases of starting fluid and a cold pack were made), and then to Phillips's residence.

In the driveway, Trooper Allen approached Phillips and told him that he "was there about his recent pseudoephedrine purchase." (Tr. 383.) As Trooper Allen stood near the garage, he detected an organic solvent odor and questioned Eric about taking something into the garage. Eric advised that he had taken some starting fluid into the garage because he and his uncle were having problems getting a vehicle started. Trooper Allen decided to seek a search warrant for the house and garage.

As the officers waited for the warrant, Eric volunteered: "If there's a Meth lab in the garage, it's mine." (Tr. 451.) Ultimately, the search of the garage and residence yielded all items necessary for the production of methamphetamine (with the exception of salt or aluminum foil), specifically: drain opener (sodium hydroxide), a bottle of Liquid Fire, sulfuric acid, a four pack of lithium batteries, a box of Wal-Phed, a box of Sudafed, instant cold packs, and Prestone starting fluid. The sodium hydroxide lye was found on a workbench inside the garage. Also inside the garage, the officers found a backpack. It contained a reaction vessel, a glass jar, and drain opener, items consistent with manufacture of methamphetamine by a method commonly referred to as a "shake and bake" or "one pot" method. (Tr. 396.) There were black flakes in the reaction vessel indicating a prior use, but the residual contents were not "rolling" or active. (Tr. 341.)

Eric pled guilty to Dealing in Methamphetamine. On February 5, 2013, Phillips was brought to trial before a jury on charges of Conspiracy to commit Dealing in Methamphetamine and Possession of Precursors. He was found guilty as charged, and received concurrent sentences of sixteen years and three years, respectively. This appeal ensued.

## Discussion and Decision

Sufficiency of the Evidence

The standard by which we review alleged insufficiency of the evidence to support a criminal conviction is well-settled:

> When reviewing the sufficiency of the evidence to support a conviction, "appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict." McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (emphasis added). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. Wright v. State, 828 N.E.2d 904 (Ind. 2005). To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it "most favorably to the trial court's ruling." Id. Appellate courts affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000) (emphasis added). It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." Moore v. State, 652 N.E.2d 53, 55 (Ind. 1995). "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001).

Drane v. State, 867 N.E.2d 144, 146-47 (Ind. 2007).

In order to convict Phillips of Conspiracy to commit Dealing in Methamphetamine, as charged, the State was required to prove beyond a reasonable doubt that Phillips intended to commit Dealing in Methamphetamine, agreed with Eric to do so and that either Phillips or

4

Eric performed an overt act in furtherance of the agreement. See Bailey v. State, 717 N.E.2d 1, 3 (Ind. 1999) (recognizing that conspiracy to commit a felony consists of three elements: intent to commit a felony, agreement with another to commit a felony, and an overt act performed by either). The State alleged, alternatively, that the overt act was either the purchase of chemical reagents or precursors or that Phillips "allowed [a] building to be used for manufacturing a controlled substance." (App. 61.)

Pursuant to Indiana Code section 35-48-1-18(1), "manufacturing" is defined as:

The production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

In proving the element of agreement, the State is not required to show an express formal agreement. Bailey, 717 N.E.2d at 3. Rather, proof of a conspiracy may rest entirely on circumstantial evidence. Id.

The evidence in support of the verdict is as follows. Shortly after Eric had reached his thirty-day limit for the purchase of pseudoephedrine, Phillips drove Eric to a Walgreens and requested a cold remedy containing pseudoephedrine (by means of a card that Eric had handed to him). After the purchase, Phillips drove to a WalMart where additional purchases of potential precursors (starting fluid and a cold pack) were made. Eric testified at Phillips's trial that he had assisted Phillips in finding the proper medication for a sickness, but acknowledged his prior admission that he and Phillips went to Walgreens to obtain "ingredients" to manufacture methamphetamine. (Tr. 439.) Eric further testified that State's

5

Exhibit 15 (depicting the items obtained upon execution of the search warrant) included

everything needed to manufacture methamphetamine and the following exchange took place:

> Prosecutor: At some point on January 19th, 2012 did you and Bruce Phillips have a conversation about your intention at some point to manufacture Methamphetamine?
>
> Eric: Yes, ma'am.
>
> Prosecutor: Tell me about that conversation.
>
> Eric: I said if we have all these I can do it another time. If we had all the ingredients.
>
> Prosecutor: If you have all the ingredients you can do it when?
>
> Eric: Another time.
>
> Prosecutor: Another time. When did that conversation take place? Or where?
>
> Eric: On the way to his house.

(Tr. 458-59.) Eric explained that Phillips was to benefit by getting "a little bit" of the

methamphetamine for smoking. (Tr. 459.) According to Eric, he had shared his product with

Phillips in the past. Phillips acknowledged, while testifying on his own behalf, that he had

previously smoked methamphetamine with his nephew.

There is sufficient evidence from which the factfinder could conclude that Phillips and

Eric agreed to manufacture methamphetamine; the State need not have presented specific

evidence of a formal agreement. Bailey, 717 N.E.2d at 3. Too, there is sufficient evidence

from which the factfinder could conclude that Phillips or Eric committed an overt act in

furtherance of the agreement, by purchasing precursors or allowing the garage to be used for

6

storage of precursors needed in the manufacturing process.[4] Phillips suggests that only Eric intended to manufacture methamphetamine – because he was the intended cook – and that the fact-finder must disregard conversation taking place after the purchase of precursors. Such is merely an invitation to reweigh the evidence and assess the credibility of witnesses. This we cannot do. See Drane, 867 N.E.2d at 146. There is sufficient evidence to support Philips's conviction of Conspiracy to commit Dealing in Methamphetamine.

Phillips also contends that the evidence is insufficient to support his possession conviction. He was convicted of violating Indiana Code section 35-48-4-14.5(e), which provides in relevant part that "[a] person who possesses two (2) or more chemical reagents or precursors with the intent to manufacture a controlled substance commits a Class D felony." Phillips does not deny that he possessed items that could be used in methamphetamine production. Rather, he challenges the element of intent. According to Phillips, only Eric intended to cook a batch of methamphetamine, the requisite criminal intent must be "personal," and the State failed to show that Phillips "intended to take part in this future manufacturing" planned by Eric. Appellant's Brief at 12.

He rests his argument upon State v. Prater, 922 N.E.2d 746, 750 (Ind. Ct. App. 2010), trans. denied. Prater involved two defendants who stole anhydrous ammonia with the intent to sell it to an unidentified third party, presumably for the manufacture of methamphetamine. See id. at 747. Prater was charged with violating Indiana Code Section 35-48-4-14.5(c),

---

[4] The State may have theorized that Phillips and Eric intended to use the garage for cooking a batch of methamphetamine on January 19, 2012. As Phillips points out, the troopers' arrival thwarted that opportunity. However, the garage was being used both for the storage of a reaction vessel and precursors other than those purchased at Walgreens and WalMart on that date.

which criminalizes possession of anhydrous ammonia with the intent to manufacture methamphetamine. A jury found Prater guilty of the charged offense, but the trial court vacated the conviction for illegal possession of anhydrous ammonia, finding insufficient evidence to establish beyond a reasonable doubt that Prater had intent to manufacture methamphetamine. See id. at 748.

The State appealed. A panel of this Court, according the words of the relevant statute their "plain, ordinary, usual" meaning, concluded that the Legislature did not intend to criminalize mere possession of anhydrous ammonia. Id. at 749. Rather, "the plain language of Indiana Code Section 35-48-4-14.5(c) requires that the person who possesses anhydrous ammonia have the intent to use that chemical in the manufacture of methamphetamine to commit a Class D felony." Id. at 750.

More recently, in Gifford v. State, 995 N.E.2d 1083 (Ind. Ct. App. 2013), trans. denied, a panel of this Court reversed a conviction for possession of precursors where the defendant and his companions procured pseudoephedrine to sell to a then-undetermined methamphetamine manufacturer. The Gifford Court "acknowledge[d] the clear applicability of Prater" and agreed that our legislature did not intend to criminalize mere possession of precursors even absent personal intent to manufacture a controlled substance. Id. at 1085.

However, the holdings in Prater and Gifford do not afford Phillips the relief he seeks, that is, the reversal of his conviction for possession of precursors. There is no evidence suggesting that Phillips intended only to sell a precursor to a third party. Rather, the evidence

8

is that Phillips was acting in concert with Eric to produce methamphetamine. In Indiana, "an accomplice is criminally liable for all acts committed by a confederate which are a probable and natural consequence of their concerted action." Alvies v. State, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009). The statute criminalizing possession of precursors does not carve out an exception. "[W]e are obliged to suppose that the General Assembly chose the language it did for a reason." Prater, 922 N.E.2d at 750. We will not engraft a requirement that an accomplice to methamphetamine manufacture must have possessed the intent to become personally involved in the cooking process, as Phillips suggests. There is sufficient evidence to support Phillips's conviction for possession of precursors.

Sentencing

A person who commits a Class B felony has a sentencing range of between six and twenty years, with ten years as the advisory term. I. C. § 35-50-2-5. A person who commits a Class D felony has a sentencing range of between six months and three years, with the advisory term being one and one-half years. I.C. § 35-50-2-7. As such, Phillips received a sentence of six years above the advisory for his Class B felony conviction and the maximum sentence for his Class D felony conviction, to be served concurrently. When imposing this sentence, the trial court found Phillips's criminal history to be an aggravator, and found his role as a caregiver to a disabled adult son to be a mitigator.

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by

statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of such review is to attempt to leaven the outliers. Id. at 1225. A defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007) (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The nature of Phillips's offense is that he and his nephew entered into an agreement to produce methamphetamine and procured precursors in furtherance of that agreement. They gathered precursors into a garage which was in proximity to the residence where Phillips's disabled son lived. The intent, as described by Eric, was to share in the product produced. Indeed, police officers recovered four glass smoking devices on a nightstand in Phillips's locked bedroom.

Phillips has a significant criminal history, including prior felony convictions for child molesting, possession of marijuana, and driving while intoxicated. He also has six misdemeanor convictions and a long history of arrests related to substance abuse. His decision to forego substance abuse treatment and subject his disabled child to substance abuse in the home does not reflect favorably upon Phillips's character.

Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

## Conclusion

Phillips's convictions are supported by sufficient evidence. His sixteen-year aggregate sentence is not inappropriate.

Affirmed.

KIRSCH, J., and MAY, J., concur.

11