

ATTORNEY FOR APPELLANT

Richard B. Walker
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian A. T. McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Lee Votra,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 16, 2019

Court of Appeals Case No.
18A-CR-1337

Appeal from the Madison Circuit
Court

The Honorable David A. Happe,
Judge

Trial Court Cause No.
48C04-1210-FB-2003

**Darden, Senior Judge.**

## Statement of the Case

Mark Lee Votra appeals the trial court's imposition of the balance of his previously suspended sentence after concluding that Votra had violated the terms of his probation on two occasions. We affirm.

## Issue

Votra presents two issues for our review which we consolidate and restate as the following question: Did the trial court abuse its discretion in the admission of certain evidence at the hearing for the alleged probation violations?

## Facts and Procedural History

On February 11, 2013, Votra pleaded guilty to dealing in methamphetamine, a Class B felony, pursuant to a plea agreement. The trial court sentenced him to eighteen years in the Department of Correction, with eight years suspended to probation, and with credit for 111 actual days served. Among the terms of Votra's conditions of probation was the requirement that he not violate the laws of Indiana or the United States and that he behave well in society.[1] Votra served the executed portion of his sentence and was released to probation.

On January 11, 2018, the probation department filed a notice of violation of the terms of Votra's probation. That notice, as amended, alleged that on January 9, 2018, Votra violated the conditions of his probation by committing the new criminal offenses of dealing in cocaine, a Level 2 felony; possession of a narcotic drug, a Level 4 felony; possession of methamphetamine, a Level 4 felony; and possession of paraphernalia, a Class C misdemeanor. Defendant

---

[1] "The law of this state is well-established that although a trial court must specify the conditions of probation in the record, it is always a condition of probation that a probationer not commit an additional crime." *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995) (internal citations omitted). Here, that condition was explicitly included as a condition of Votra's probation.

was arrested on January 9, 2018. These charges against Votra were filed in Madison County under cause number 48C04-1801-F2-84 (F2-84) on January 10, 2018.

[5] The notice further alleged that on March 14, 2018, Votra had violated the conditions of his probation by committing the new criminal offenses of possession of methamphetamine, a Level 6 felony; maintaining a common nuisance, a Level 6 felony; possession of marijuana, a Class B misdemeanor; unlawful possession of a syringe, a Level 6 felony; possession of a controlled substance, a Level 6 felony; and possession of paraphernalia, a Class C misdemeanor. These charges were also filed in Madison County, but under cause number 48C05-1803-F6-754 (F6-754) on March 20, 2018.

[6] On May 1, 2018, the trial court held an evidentiary hearing on the amended petition. During the hearing, the State offered Exhibit 1, the affidavit of probable cause in F2-84. The affidavit set forth allegations of an encounter between Votra and law enforcement officers outside Votra's apartment on January 9, 2018. Votra was found to be in possession of a Crown Royal bag. When law enforcement officers examined the bag, they discovered numerous bags of a crystal substance, crystal rocks, a white powder substance, and cut straws with residue. Additionally, the bag contained a digital silver scale and a plastic container in which there were numerous bags of a crystal substance and crystal rocks.

[7] Officer Matthew Mills of the Elwood Police Department prepared the probable cause affidavit. He stated that he had field tested the crystal substance, which tested positive for methamphetamine. He also tested the white powder, which tested positive for cocaine. Officer Mills used a digital scale and found that the crystal substance weighed approximately 45.24 grams. The white powder weighed approximately 11.3 grams. Officer Mills stated that Votra admitted he knew the Crown Royal bag contained methamphetamine when he took possession of it, but claimed that the bag had been placed in his jacket pocket by someone else.

[8] Later with respect to F2-84, officers obtained a search warrant for Votra's apartment. They found numerous items of paraphernalia, including smoking devices (some containing residue), and two of which contained residue that field tested positive for methamphetamine. They also discovered 215 capsules, later identified as Gabapentin, a prescription-only medication.

[9] The State also offered Exhibit 2 at the evidentiary hearing. The exhibit was the affidavit of probable cause filed in F6-754. The affidavit, prepared by Officer Matthew Walker of the Elwood Police Department, described his encounter with Votra on March 14, 2018. Officer Walker was accompanying the Madison County Unified Courts Adult Probation Services Department during a home visit on that date.

[10] Officer Walker was shown a box found in one of two bedrooms in the residence. The box contained narcotics and paraphernalia. In the back

bedrooms of the residence, probation officers located ten clear plastic baggies containing marijuana, which appeared to be packaged for sale; a clear plastic baggie and a clear container holding multiple burnt marijuana cigarettes; a clear plastic baggie containing four green tablets labeled MYLAN 457, (later identified as one-milligram tablets of Lorazepam, a Schedule IV Controlled Substance); a clear plastic baggie containing four and a half white tablets labeled 54 411, later identified as buprenorphine hydrochloride 8M6 (also known as Suboxone, a Schedule III Controlled Substance); five clear baggies containing a white powdery substance which field tested positive for methamphetamine; four marijuana smoking devices, including three devices containing burnt marijuana; several packages of rolling papers; three glass smoking devices typically used to consume methamphetamine, which held a white powdery substance; and a hypodermic syringe.

[11]   Votra told the officers he lived at the residence located at 121 S. K Street since his release from jail. He claimed that he did not sleep in either of the bedrooms but, instead, slept in the living room. He claimed that the woman present at the residence, Lorrie Wyatt (who happened to be his girlfriend), slept in one of the bedrooms. He denied that any of the contraband belonged to him. Wyatt, on the other hand, told officers that Votra slept with her in the back bedroom. Property belonging to both Votra and Wyatt was found in the south back bedroom where most of the contraband had also been found. Officers arrested both Votra and Wyatt and transported them to jail on March 14, 2018.

Votra objected as follows when the exhibits were offered by the State at the hearing:

> [State]: The State is going to admit State's Exhibit 1 and 2. It's the probable cause affidavits for causes ending in 754 and 84.
>
> [Defense]: We would object to the admission of those, Your Honor, uh, confrontation clause. Also I believe there is hearsay in there where the other occupant of the residence there stating [sic] that Mr. Votra slept in that back bedroom there, um, where all those items were found.
>
> [Court]: All right. May I see the exhibits? Which one contains the hearsay statement you were talking about, someone talking about using a back bedroom?
>
> * * * *
>
> [Court]: All right. The Court finds, um, –Well first of all I'll note that the rules of evidence don't strictly apply on probation violation proceedings. The issue is primarily one of reliability. And the court finds that State's 1 and 2 do contain adequate indicia of reliability. These are sworn probable cause affidavits filled out by law enforcement officers and the hearsay statements from declarant Wyatt that are contained in State's Exhibit 2 were made in the context of a home visit involving probation officers and police officers present at a home where Ms. Wyatt was present. So the court finds that a person being confronted with officers in the course of conducting an official function like that have a strong motivation to speak truthfully because they're subject to legal consequences if they do provide untruthful information. So those provide adequate indicia of reliability for these to be admitted in this proceeding. So I'm going to take a moment to review both of these now, more fully.

Tr. pp. 52-53.

[13] The trial court admitted the exhibits over objection, and the State presented no other evidence.

[14] Votra testified at the sanctions portion of the hearing during which he discussed his criminal history, his behavior while incarcerated, and his request to remain on supervised release or community corrections as a sanction for any violations the court might find. Votra was also cross-examined by the State. Votra testified that he had been given opportunities to rehabilitate himself. However, he testified that he had not pursued aftercare for his addiction and did not deny that he had been charged with additional crimes involving contraband. After hearing Votra's testimony and the arguments of counsel, the trial court concluded, "there's just nothing left that we have in the system for you. You just need to go and do your time." *Id.* at 62. Votra now appeals.

## Discussion and Decision

[15] Votra presents two challenges to the admission of Exhibits 1 and 2 at the evidentiary hearing. First, Votra contends that the trial court abused its discretion by admitting both exhibits because it violated his right of confrontation. Next, Votra claims that Exhibit 2 was inadmissible because it "contained the hearsay statement of a non police witness who was present at the time of the arrest at her apartment." Appellant's Br. p. 13.

[16] Reviewing courts evaluate a trial court's decision to revoke probation for an abuse of discretion. *Whatley v. State*, 847 N.E.2d 1007, 1009 (Ind. Ct. App.

2006). As we have often stated, an abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court. *Id.*

[17] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Murdock v. State*, 10 N.E.3d 1265, 1267 (Ind. 2014). "The trial court 'enjoys wide latitude in fashioning the terms of a defendant's probation.'" *Kays v. State*, 963 N.E.2d 507, 509 (Ind. 2012) (quoting *Bailey v. State*, 717 N.E.2d 1, 4 (Ind. 1999)). "Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). "If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Id.*

[18] Probation hearings are civil in nature, and the State must prove an alleged probation violation by a preponderance of the evidence. Ind. Code § 35-38-2-3(f) (2015); *Murdock*, 10 N.E.3d at 1267. If sufficiency of the evidence of the probation violation is at issue, then a reviewing court will consider only the evidence most favorable to the judgment, without regard to weight or credibility, and will affirm if there is substantial evidence of probative value to support the trial court's conclusion. *Murdock*, 10 N.E.3d at 1267.

[19] "Challenges to the admission of evidence are ordinarily reviewed for an abuse of trial court discretion." *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). A

court on appeal will reverse only where the decision of the trial court is clearly against the logic and effect of the facts and circumstances. *Id.*

[20] However, in terms of the admissibility of evidence in certain circumstances, we observe that Indiana Evidence Rule 101(d)(2) provides that except for the rules involving privileges, the rules of evidence do not apply in probation proceedings. Indiana Code section 35-38-2-3(f) further informs us though that the probationer in a revocation proceeding "is entitled to confrontation, cross-examination, and representation by counsel."

[21] Initially, we note that Votra does not specify whether he is arguing a right of confrontation based in federal law, or a right guaranteed by the Indiana constitution.[2] As such, we consider Votra's claim in terms of the rights conferred under the U.S. Constitution. *See e.g. Dye v. State*, 717 N.E.2d 5, 10 n.2 (Ind. 1999) ("'Due process' is a term found in the Fourteenth Amendment of the U.S. Constitution. It does not appear in the Indiana Constitution. The closest state analog is the 'due course of law' provision in Article I, Section 12. Dye does not cite that provision, let alone offer a separate analysis based on the state constitution. Accordingly, any state constitution claim is waived. *Valentin v. State*, 688 N.E.2d 412 (Ind. 1997)").

---

[2] When the State offered Exhibit 1 and Exhibit 2 at the hearing, the defense stated as recited above, "We would object to the admission of those, Your Honor, uh, confrontation clause." Tr. p. 52. The Confrontation Clause contained in the Sixth Amendment to the United States Constitution finds its counterpart in article 1, §13 of the Indiana Constitution.

[22] Turning then to the application of federal law, in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court considered Due Process considerations in the context of parole revocation hearings. The United States Supreme Court held that the Due Process Clause was applicable to parole revocation proceedings; however, because it was not part of a criminal prosecution, the full panoply of rights due a defendant was not applicable. 408 U.S. at 480, 92 S.Ct. at 2600. A panel of this court summarized those minimum requirements of due process explained in *Morrissey* as follows:

> (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) *a written statement by the factfinder as to the evidence relied on and reasons for revoking probation.*

*Terrell v. State*, 886 N.E.2d 98, 100-01 (Ind. Ct. App. 2008), *trans. denied*.

[23] In *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973), the United States Supreme Court concluded that the same due process guarantees afforded in parole revocation hearings should be afforded during probation revocation proceedings. In *Isaac v. State*, 605 N.E.2d 144 (Ind. 1992), our Supreme Court, in a probation revocation case and in recognition of *Morrissey* and *Gagnon*, connected the requirements from federal caselaw with the state statutory due process guarantees provided probationers in revocation

proceedings. The Court noted when commenting on a prior version of the statute that Indiana Code section 35-38-2-3(f) (2015), provides that the probationer "is entitled to confrontation, cross-examination, and representation by counsel."

[24] Importantly, though, in a footnote in *Gagnon*, the Court explained the following as respects the right to present witnesses and to confront and cross-examine adverse witnesses:

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-eamine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the Morrissey requirements.

411 U.S. at 783, 93 S.Ct. at 1760 n.5.

[25] In *Cox v. State*, 706 N.E.2d 547 (Ind. 1999), our Supreme Court compared the due process requirements of community corrections revocation proceedings with probation revocation proceedings, concluding that "judges may consider any relevant evidence bearing some substantial indicial of reliability," including "reliable hearsay." 706 N.E.2d at 551 (footnote omitted). Further, on the issue

of reliable hearsay, in *Whatley*, a panel of this court considered whether it was proper for a trial court in a probation revocation proceeding to take judicial notice of a probable cause affidavit challenged on hearsay grounds that it lacked indicia of reliability. We acknowledged that the probable cause affidavit was hearsay because it was an out of court statement offered for the truth of the matter asserted, but that a probable cause affidavit prepared and signed under oath by an officer bore substantial indicia of reliability such that the trial court did not err in taking judicial notice of the affidavit. 847 N.E.2d at 1010.

[26]     Later, in *Reyes v. State*, 868 N.E.2d 438 (Ind. 2007), our Supreme Court addressed the issues of both confrontation rights and the admission of hearsay in probation revocation proceedings. Our Supreme Court acknowledged the existence of multiple tests employed by courts to decide whether the admission of specific hearsay evidence may be done without violating a probationer's confrontation rights. However, the Supreme Court concluded that the substantial trustworthiness test was "the more effective means for determining the hearsay evidence that should be admitted at a probation revocation hearing." *Id.* at 441.

[27]     The substantial trustworthiness test provides for a trial court determination of whether the evidence reaches "a certain level of reliability, or if it has a substantial guarantee of trustworthiness." *Id.* Additionally, our Supreme Court noted "the substantial trustworthiness test implicitly incorporates good cause into its calculus." *Id.* Good cause is a component of another test known as the balancing test. *Id.*

[28]     Here, Exhibit 1 is the probable cause affidavit in F2-84. It is sworn under the penalities of perjury and signed by Officer Mills of the Elwood Police Department. The affidavit contained the field test results of suspected controlled substances. Additionally, the affidavit contained Officer Mills' statement that Votra admitted he knew the Crown Royal bag contained methamphetamine when he took possession of it. A silver digital scale was also discovered in the Crown Royal bag. Police officers obtained a search warrant for Votra's apartment where they later discovered items of paraphernalia and prescription-only pills.

[29]     Exhibit 2 is the probable cause affidavit in F6-754. The affidavit, prepared and signed by Officer Matthew Walker of the Elwood Police Department and sworn under penalties of perjury, described a subsequent encounter with Votra involving controlled substances. During a home search, Officer Walker, who accompanied probation officers, was shown controlled substances and paraphernalia found on the premises. Included in the affidavit is Votra's girlfriend Lorrie Wyatt's statement, contradicting Votra's denial that he slept in the bedroom where most of the contraband was found. She claimed that Votra did, in fact, sleep in that bedroom with her.

[30]     First, these exhibits are both sworn affidavits signed by the law enforcement officers involved in each of the encounters with Votra. We have held that a probable cause affidavit prepared and signed by an officer under oath bears substantial indicia of reliability. *Whatley*, 847 N.E.2d at 1010. Furthermore, Votra admitted that he knew there were controlled substances contained in the

Crown Royal Bag, and had informed the trial court at his bond reduction hearing that he planned to live with Lorrie Wyatt upon his release from prison. Those acknowledgements add to the reliability of the exhibits. Therefore, Votra's challenge to the admissibility of those exhibits fails on those grounds.

[31] In *Whatley*, we stated, "When, as here, the alleged probation violation is the commission of a new crime, the State does not need to show that the probationer was convicted of a new crime." 847 N.E.2d at 1010. "The trial court only needs to find that there was probable cause to believe that the defendant violated a criminal law." *Id.* The evidence showed that probable cause was found to file new charges under two different cause numbers based on Votra's criminal activity. Further, his challenge based on Indiana Evidence Rule 702, contesting the lack of expert evidence to support the admission of the field test results fails because the rules of evidence do not apply to probation revocation proceedings. Evid. R. 101(d)(2).

[32] Votra also challenged Exhibit 2 because it contained a hearsay statement. In *Beasley v. State*, 46 N.E.3d 1232, 1238 (Ind. 2016), our Supreme Court, in a criminal direct appeal, concluded that although "corroborating evidence is not strictly required by our Rule 804(b)(3)," such corroboration can support a trial court's determination that the hearsay testimony was reliable. While the rules of evidence do not strictly apply in probation revocation proceedings, for clarity we explain that Evidence Rule 804(b)(3) pertains to statements against interest. Those statements are made only if a reasonable person believed it to be true because, "when made, it was so contrary to the declarant's proprietary or

pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability."

[33] In this case, Wyatt told probation and police officers during a home visit that both she and Votra shared the bedroom in which the bulk of the contraband was found. Her statement not only implicated Votra, but also implicated her in illegal possession of contraband. Her statements were corroborated by Votra's own earlier statements given under oath at his bond reduction hearing on February 27, 2018, wherein he testified that he planned to live with Wyatt, his girlfriend, upon his release on bond at 121 S. K Street, which was the site of his arrest and where the drugs were found. Votra has failed to establish reversible error in the trial court's determination of admissibility on these grounds in his probation revocation proceedings.

[34] The trial court accepted Votra's original guilty plea, sentenced him, and imposed the specific conditions of his probation at that time. The trial court also evaluated and denied Votra's request for sentence modification and other requests filed by Votra with the court. That same judge ordered Votra's incarceration based upon the notice of probation violation. The trial court also heard the arguments and reviewed the evidence in support of the petition for probation revocation. Although the better practice might have been to present live testimony in support of the documentary evidence, given the trial court's familiarity with this defendant and the rules with which he was required to comply during probation, we conclude that under the totality of the facts and circumstances of this case, the trial court did not err.

# Conclusion

[35] In light of the foregoing, we affirm the trial court's determination that Votra violated the conditions of his probation and did not abuse its discretion by imposing the balance of Votra's previously suspended sentence.

[36] Affirmed.

Mathias, J, and Crone, J., concur.